United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEARSON EDUCATION, INC., a Delaware corporation; JOHN WILEY & SONS, INC., a New York corporation; CENGAGE LEARNING, INC., a Delaware corporation; and THE MCGRAW-HILL COMPANIES, INC., a New York corporation,<br><br>        Plaintiffs,<br><br>  v.<br><br>DICKSON T. WONG, individually; DICKSON T. WONG, as Trustee of the SIERRA SKY REVOCABLE LIVING TRUST; DICKSON T. WONG, as Trustee of the XELA REVOCABLE LIVING TRUST DATED DECEMBER 25, 2008, a/k/a the XELA REVOCABLE LIVING TRUST; and DOES 1-5,<br><br>        Defendants. | Case No. 09-1889 SC<br><br>ORDER GRANTING MOTION FOR DEFAULT JUDGMENT |

## I. **INTRODUCTION**

Plaintiffs Pearson Education, Inc., John Wiley & Sons, Inc., Cengage Learning, Inc., and the McGraw-Hill Companies (collectively, "Plaintiffs") now seek the entry of a default judgment against Defendant Dickson Wong ("Wong"), both in his individual capacity and as Trustee to two different revocable living trusts. Docket No. 28 ("Motion"). Plaintiffs accuse Wong of infringing upon their copyrights by selling photocopies of

instructors' solutions manuals through online marketplaces. See Compl., Docket No. 1. Plaintiffs have been unable to locate Wong, in spite of repeated and varied efforts to do so. Having considered the papers submitted by Plaintiffs, this Court concludes that an award of default judgment against Wong is appropriate, and GRANTS Plaintiffs' Motion.

**II.   BACKGROUND**

Plaintiffs are each engaged in the business of publishing educational textbooks. Id. ¶ 14. Plaintiffs typically require authors to assign the copyrights for their works to Plaintiffs, or to grant Plaintiffs exclusive rights to reproduce and distribute the works in the United States. Id. ¶ 15. Plaintiffs also publish instructors' solutions manuals ("ISMs"), which are supplementary materials that aid professors in grading homework. Id. ¶ 19. Plaintiffs do not sell these ISMs to the general public, "and tightly control distribution thereof to known faculty." Id. Plaintiffs do this because students may use these ISMs to cheat on homework or tests, and professors will be less likely to select Plaintiffs' textbooks for use in their courses if the ISMs for those textbooks are widely available to students. Id.

The history of this case involves a somewhat convoluted series of attempts to track down an initially unknown individual who was selling copies of Plaintiffs' ISMs online, and who, by all appearances, has gone to great lengths to keep his identity hidden. Alexandra Ricciardi ("Ricciardi") is employed by Pearson Education, Inc. ("Pearson"), and part of her job involves searching online for activity that infringes upon Pearson's copyrights and trademarks.

2

Ricciardi Decl. ¶¶ 1-2.[1] In early- or mid-2008, while looking on craigslist.org (a site featuring online classified ads), she found two advertisements for ISMs and test banks for textbooks that included works published by Pearson. Id. ¶ 2. The craigslist ad included instructions for contacting the seller. Id. In June of 2008, she contacted the seller via email to ask about the availability of a certain Pearson ISM. Id. ¶ 3, Ex. A. The seller responded, under the name of "Kerry Melbourne," that the particular ISM was available, and requested payment through PayPal, Inc. ("PayPal"),[2] if Ricciardi wanted to proceed. Id. Ex. B. The seller's PayPal account was under the name "Red Lionel," with a different email address from that used by "Kerry Melbourne." Id. Ricciardi complied with the request, and paid $89.97 plus shipping for the ISM. Ricciardi Decl. ¶ 3.

Shortly thereafter, Ricciardi received in the mail a copy of an ISM that was different from the one she had ordered from the seller. Id. ¶ 4. The copy was a photocopy that was not professionally bound. Id. ¶ 6. She informed the seller, via email, that she had received the wrong ISM, and the seller instructed her to return the incorrect copy to an address in Claremont, California. Id. ¶ 4, Ex. C ("Ricciardi Email Chain"). The address provided was that of William McVittie, and after investigating the address, Plaintiffs discovered that it belonged to a retired California state court judge who "emphatically denied being the Internet seller who had violated Plaintiffs' rights."

---

[1] Ricciardi submitted a declaration in support of the Motion. Docket No. 30.
[2] PayPal is an internet service that is often used to transfer funds for online transactions.

Dunnegan Decl. ¶ 5.[3]  After sending the incorrect ISM to the provided address, Ricciardi received a photocopy of the ISM that she had initially requested from the seller.  Id. ¶¶ 6-7.  While Ricciardi was conducting this investigation, other individuals who were working for Plaintiffs were ordering similar material from similar craigslist postings, which later turned out to be sold by the same seller.  Id. ¶ 7.  For example, Jennifer Siewert ("Siewert"), paralegal for Plaintiffs' law firm, responded to similar craiglist ads, and a seller using the name "Kerry Limar" directed her to submit payment to PayPal accounts under the names of "Betty Cash" and "Jeff Howks."  Siewert Decl. ¶¶ 3-4.[4]  She received photocopies of four ISMs, for which she paid $89.97 apiece.  Id. ¶¶ 3-5.

Plaintiffs' next step was to file a lawsuit for copyright infringement in the Southern District of New York against the various fictitious names used by the still-unknown sellers ("New York Litigation").  Compl. ¶ 25.  Plaintiffs notified the sellers by sending emails to the various email addresses that they had collected during their investigation.  Id. ¶ 26.  Plaintiffs then sought and received permission to subpoena PayPal to determine the sellers' identities.  Dunnegan Decl. ¶ 8, Ex. A.  PayPal responded with voluminous business records.  These records revealed a total of $20,563.27 worth of transactions involving thirty-five different works to which Plaintiffs held copyrights.  Dunnegan Decl. ¶¶ 11-18, Exs. C, D.  These records also revealed that the various Paypal

---

[3] William Dunnegan ("Dunnegan"), counsel for Plaintiffs, has filed a declaration in support of the Motion.  Docket No. 29.

[4] Siewert submitted a declaration in support of the Motion.  Docket No. 31.

4

accounts each sent some of the proceeds to a single Wachovia Bank account. Id. Ex. B.

As Plaintiffs still were not aware of the sellers' identities, they next sought and received permission to subpoena Wachovia Bank. Id. Ex. E. Wachovia Bank responded by turning over documents that indicate that the owner of the bank account is "Sierra Sky Revocable Living Trust," and that the signatory is Dickson Wong. Id. Ex. F. Wachovia Bank also disclosed a letter that it had received from "Trustee for Sierra Sky Revocable Trust," which requested that that Bank "Please notify the trust and the attorney by mail immediately if you receive a subpoena request from a plaintiff's attorney requesting for [sic] the trust's name and the physical address related to" the New York Litigation. Id. Ex. G ("Letter to Wachovia"). The address provided in the letter was located in Hong Kong. Id. Plaintiffs were unsuccessful in serving Wong in connection with the New York Litigation, and dismissed that suit without prejudice. Id. ¶ 22. They learned that Wong had recently owned a condominium unit in the Brittan Heights Condominiums, located in San Carlos, California, and Plaintiffs therefore filed this suit in the Northern District of California. See id. ¶ 23.

Each time Plaintiffs proceeded with the third-party subpoenas outlined above, they sent notices to the email addresses that they had collected during their investigations. Id. ¶¶ 9, 20. They also sent notices to these email addresses after they received a response from PayPal, on December 28, 2008. Id. ¶ 11. The following day, on December 29, 2008, Wong transferred ownership of the Brittan Heights Condominium unit from himself to himself as

Trustee of the Xela Recoverable Living Trust Dated December 25, 2008, by quitclaim deed filed in the Office of the County Clerk-Recorder of San Mateo County. Id. ¶ 24, Ex. H ("First Quitclaim Deed"). Plaintiffs allege that this transfer was without consideration. Id. ¶ 24. On January 9, 2009, Wong then recorded another quitclaim deed transferring the same property to "Xela Revocable Living Trust" ("Xela") to "confirm[] a name change." Id. Ex. I ("Second Quitclaim Deed").

After filing suit in this Court, and after several varied attempts to serve Wong, Plaintiffs have moved for default judgment, and request that this Court award statutory damages against Wong for copyright infringement, award attorneys' fees, issue a permanent injunction enjoining future copyright violation and requiring the destruction of all copyrighted works in his possession. Compl. at 9-10. They also seek to set aside the transfer of the condominium, and claim that this was a fraudulent transfer that was intended to frustrate Plaintiffs' attempt to recover in this lawsuit and the New York Litigation. Id.

**III. LEGAL STANDARD**

After entry of a default, the Court may enter a default judgment. Fed. R. Civ. P. 55(b)(2). Its decision whether to do so, while "discretionary," Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980), is guided by several factors.

As a preliminary matter, the Court must "assess the adequacy of the service of process on the party against whom default is requested." Bd. of Trs. of the N. Cal. Sheet Metal Workers v.

Peters, No. 00-0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).

If the Court determines that service was sufficient, it may consider the following factors in its decision on the merits of a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977). Therefore, for the purposes of this Motion, the Court accepts as true the facts as presented in the Complaint.

## IV. DISCUSSION

### A. Service of Process

Plaintiffs have been unable to locate Wong despite diligent efforts. Plaintiffs' attempts to personally serve Wong were previously outlined to this Court by Julie E. Hofer ("Hofer"), counsel for Plaintiffs. Hofer Decl. ¶¶ 4-14.[5] This included employing a private investigator, who was able to discover two potential addresses for Wong. Id. Ex. D. One was the Brittan Heights Condominium unit that Wong transferred to Xela in late

---

[5] Hofer submitted a declaration in support of Plaintiffs' previous Ex Parte Application for Order for Service by Publication. Docket Nos. 14, 16.

7

1  2008; the other was located at 403 Main Street in San Francisco,
2  California.  Id.  Process servers repeatedly attempted personal
3  service at these locations.  Id. Exs. F ("Mazzocco Decl."), G
4  ("Galdamez Decl.").[6]  One process server was told that Wong owns
5  but rents out the Brittan Heights Condominium.  Mazzocco Decl. at
6  1.  Plaintiffs attempted to mail Wong copies of the Complaint,
7  summons, notices and acknowledgments of receipt at the two
8  addresses they had located, pursuant to California Code of Civil
9  Procedure section 415.30(c), however receipt was never acknowledged
10 (the Brittan Heights Condominium was sent back with the message:
11 "Return to sender -- No longer @ this address").  Hofer Decl. ¶ 14.
12      Plaintiffs next sought permission from this Court to serve
13 Wong by publication, and this Court granted Plaintiffs' request.
14 Docket No. 18.  A notice was thereafter published in the San
15 Francisco Chronicle and the San Mateo County Times on a weekly
16 basis, from July 23, 2009, to August 15, 2009.  Docket Nos. 23, 24.
17 Such service was appropriate in light of Plaintiffs' well-
18 documented efforts to serve Wong and the trusts, and was authorized
19 by Rule 4(e)(1) of the Federal Rules of Civil Procedure and section
20 415.50(a)(1) of the California Code of Civil Procedure.  Wong has
21 still declined to appear before this Court, and the clerk entered
22 default against Wong.  Docket No. 27.  The Court is mindful of
23 Wong's deliberate attempt to evade service in the New York
24 Litigation, and his various attempts to hide his identity through
25 the use of false names and email addresses.  The prior contact
26 between the parties makes it clear that Wong was apprised of

---

[6] Both Bret Mazzocco and William Galdamez attempted to serve process upon Wong, and submitted declarations to that effect. Mazzocco Decl.; Galdamez Decl.

8

Plaintiffs' accusations and went to great lengths to avoid confronting them. Having failed to respond to proper service by publication, Wong has subjected himself to the possibility of default judgment.

**B.     Merits of the Motion**

Accepting the allegations in the Complaint as true, as it must, the Court finds that the Eitel factors favor default judgment.

    1.     Prejudice

Plaintiffs would be prejudiced absent entry of default judgment. If Wong is allowed to continue selling counterfeit goods that infringe on Plaintiffs' copyrights, Plaintiffs will suffer irreparable harm in a number of ways. Although it is not clear that Plaintiffs risk losing money from direct sales every time Wong sells an unauthorized copy of an ISM, professors will be less likely to select Plaintiffs' textbooks for use in their classes if the ISMs become widely available to students. Without the entry of a default judgment, Plaintiffs would not have another remedy for these harms. Such a situation qualifies as prejudice.

    2.     Merits of Plaintiffs' Substantive Claims

To prevail on their claims of copyright infringement, Plaintiffs must establish (1) they own valid and protectable copyrights, and (2) copying of the constituent elements of their works which are original. See Feist Pub'lns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). Plaintiffs have claimed that they hold valid copyrights to thirty-five original works that are in dispute in this litigation. Compl. Exs. A, B, C, D. By defaulting, Wong is deemed to have admitted this. They have

alleged that Wong has reproduced and offered each of these for sale, and have submitted evidence that Wong has received payment for the sale of each of these works. See Dunnegan Ex. C ("Summary of PayPal Sales").[7] The Court concludes that Plaintiffs' claims for copyright infringement under 17 U.S.C. § 501 et seq. are meritorious.

The Court further finds that Wong's use of the protected works was willful. It would be absurd to suggest that the photocopied material that Plaintiffs' agents received through their investigations could have been reproduced by accident. Wong was clearly cognizant of the wrongful nature of his conduct, as he was apparently selling the ISMs under a variety of false names. Wong deliberately attempted to hide his identity when he requested that Wachovia Bank not comply with Plaintiffs' subpoena in the New York litigation. See Letter to Wachovia. Wong's inexplicable attempt to implicate a retired state court judge in his wrongful conduct, by instructing his customers to return merchandise to the judge's address, see Ricciardi Email Chain, can be interpreted as further evidence that Wong was willful or even malicious in his misconduct. Plaintiffs have established that Wong engaged in a deliberate scheme to reproduce and profit from Plaintiffs' protected works.

Wong is also deemed to have admitted Plaintiffs' fraudulent conveyance claim, brought under California's Fraudulent Transfer Act, Cal. Civ. Code §§ 3439-3439.12. "A transfer made . . . by a

---

[7] Plaintiffs submitted a cd-rom that contains the documents that PayPal turned over in response to Plaintiffs' subpoena. Although these documents are too voluminous to post on this Court's electronic docket, Plaintiffs have also submitted a summary report pursuant to Rule 1006 of the Federal Rules of Evidence. See Summary of PayPal Sales.

debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . if the debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor" or "[w]ithout receiving a reasonably equivalent value in exchange for the transfer . . . ." Id. § 3439.04(a). In determining whether a transfer was fraudulent, the court may consider "[w]hether before the transfer was made . . . the debtor had been sued or threatened with suit." Id. § 3439.04(b)(4). Plaintiffs allege that Wong transferred ownership of the Brittan Heights Condominium from himself to himself as Trustee of Xela the day after Plaintiffs notified him that Paypal had complied with their subpoena. See Compl. ¶ 29; Dunnegan Decl. ¶¶ 11, 24. The transfer apparently allowed Wong to maintain control over the property, and it seems that Wong absconded after the transfer, as Plaintiffs have been completely unable to locate him in spite of their repeated efforts. All of these factors suggest a fraudulent transfer. See Cal. Civ. Code §§ 3439.04(b). The Court finds that Plaintiffs' fraudulent transfer claim is meritorious.

### 3. Sufficiency of the Complaint

Plaintiffs properly allege the necessary elements for their causes of action. The Complaint identifies the protected works in dispute, identifies Plaintiffs as the owner of the rights thereunder, details Plaintiffs' investigations of the alleged infringement, and describes how Wong was violating their rights. Plaintiffs also allege enough facts to support a claim of fraudulent transfer. Accordingly, Plaintiffs' Complaint is sufficient.

11

### 4. Amount of Money at Stake

Plaintiffs are seeking statutory damages, Mot. at 10, and the amount at issue therefore consists of discretionary awards bounded by statutory minimums and maximums. These damages are authorized by statute. 17 U.S.C. § 504(c). The discretionary nature of the amount at issue favors default judgment. See Elektra Entm't Group, Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005).

### 5. Possibility of a Dispute Concerning Material Facts

There may be a potential for a dispute concerning material facts. However, Plaintiffs have provided evidence of a thorough investigation into a series of apparently related online sales of infringing ISMs. In particular, the evidence received in response to the Paypal subpoena details specific transactions in which customers identify by name the particular protected ISMs that they seek to purchase. Plaintiffs have provided evidence that Wong was involved in and profited from these sales, as the proceeds were transferred directly to a bank account for which he was the signatory. This factor also favors default judgment.

### 6. Whether Default Was Due to Excusable Neglect

This Court is satisfied that Wong's failure to act is not a case of excusable neglect. Wong clearly had actual notice of the New York Litigation, and sought to interfere with a third-party subpoena that was served upon his bank. See Letter to Wachovia. Wong used false names in selling the infringing works at issue in this litigation, and it is clear that any difficulty that Plaintiffs have had in locating him and providing in-person service has been the direct result of Wong's own obfuscation. Because Wong's failure to participate in this litigation cannot be

considered excusable neglect, this factor favors entry of default judgment.

       7.   <u>Strong Policy Favoring Decision on the Merits</u>

While it is preferable to decide cases on the merits whenever possible, this preference is not dispositive.  Where a party fails to defend against a complaint, as Salem has failed here, Rule 55 authorizes the Court to enter default judgment.  <u>Kloepping v. Fireman's Fund</u>, No. 94-2684, 1996 U.S. Dist. LEXIS 1786, at *10 (N.D. Cal. Feb. 14, 1996).

**C.    Remedy**

Plaintiffs request monetary damages, fees and costs, and equitable relief in the form of a permanent injunction.  Plaintiffs are also seeking to set aside Wong's fraudulent transfer of the Brittan Heights Condominium.

       1.   <u>Damages</u>

"A plaintiff may elect statutory damages 'regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits.'"  <u>Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.</u>, 259 F.3d 1186, 1194 (9th Cir. 2001) (citations omitted).  Where, as here, plaintiffs establish that infringement of a copyrighted work was willful, a court may award statutory damages of up to $150,000.  17 U.S.C. § 504(c)(2).  This Court is guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like."  <u>Peer Int'l Corp. v. Pausa Records, Inc.</u>, 909 F.2d 1332, 1336 (9th Cir. 1990).  Given Plaintiffs' legitimate need to restrict the circulation of their ISMs, and to keep them away from students who may use the material

13

for cheating, the Court believes that it would be extremely difficult to establish actual damages in this case, and statutory damages are therefore particularly appropriate. Furthermore, Plaintiffs have satisfied this Court that Wong's infringement was willful and flagrant. Under these conditions, the Court finds Plaintiffs' request for an award of statutory damages of $15,000 per protected work, for a total judgment of $535,000, to be quite reasonable. Mot. at 10.

### 2. Fees & Costs

Under 17 U.S.C. § 505, this Court has discretion to "allow the recovery of full costs by or against any party," and "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." Although Plaintiffs have requested fees and costs as a part of default judgment, they have not yet attempted to establish their total costs and fees by proof sufficient to support a motion for attorney fees. Pursuant to Civil Local Rule 54-5, Plaintiffs may request fees for up to fourteen days after judgment is entered. Accordingly, Plaintiffs' request for fees is DENIED WITHOUT PREJUDICE.

### 3. Request to Set Aside Conveyance of Brittan Heights Condominium

Plaintiffs have established that the transfer of the Brittan Heights Condominium unit from Wong to Xela, and the subsequent transfer from Xela to itself under a slightly different name, was likely fraudulent. Pursuant to section 3439.07(a)(1) of the California Civil Code, this Court may set these transfers aside. The Court concludes that it would be proper to set aside these transfers as to Plaintiffs, so that Plaintiffs may enforce this

default judgment against Wong through a lien on his property.

### 4. Permanent Injunction

Plaintiffs have demonstrated that Wong willfully has violated their rights to the copyrighted works. Plaintiffs have failed to locate Wong, and there is no indication that his ability or intent to continue infringement has been encumbered by this lawsuit. His willful infringement and his continued attempts to elude Plaintiffs make the threat of ongoing or future infringement credible. In such circumstances, the Court is authorized by the Copyright Act to issue a permanent injunction to prevent or restrain further infringement. See 17 U.S.C. § 502(a); Sega Enters. Ltd. v. MAPHIA, 948 F. Supp. 923, 940 (N.D. Cal. 1996) ("Generally, a showing of copyright infringement liability and the threat of future violations is sufficient to warrant a permanent injunction."). The Court finds that a permanent injunction is warranted. The injunction shall prohibit Wong from infringing any copyrights that Plaintiffs now have or may acquire in the future. See Sony Music Entm't, Inc. v. Elias, No. CV 03-6387, 2004 U.S. Dist. LEXIS 30385, at *13-14 (C.D. Cal. Jan. 20, 2004) (enjoining infringement of existing and future works).

## V. CONCLUSION

Default judgment is hereby entered against Dickson T. Wong, individually, as Trustee of the Sierra Sky Revocable Living Trust, and as Trustee of the Xela Revocable Living Trust Dated December 25, 2008, aka the Xela Revocable Living Trust ("Xela") (collectively, "Wong"), and in favor of Plaintiffs. Judgment is entered in favor of Pearson Education, Inc., in the amount of

$135,000. Judgment is entered in favor of John Wiley & Sons, Inc., in the amount of $90,000. Judgment is entered in favor of Cengage Learning, Inc., in the amount of $105,000. Judgment is entered in favor of the McGraw-Hill Companies in the amount of $195,000. Judgment against Wong in his multiple capacities is joint and several. Interest shall accrue from the date of this judgment pursuant to 28 U.S.C. § 1961(a).

The Court DENIES WITHOUT PREJUDICE Plaintiffs' request for attorney fees.

The Court hereby sets aside two transfers of the real property known as Condominium Unit 042-05, Brittan Heights Condominium, Lot No. 5, RSM 80/18-37, City of San Carlos, County of San Mateo, State of California, with the address 3358 Brittan Avenue, Unit #5, San Carlos, California, 94070-3416, having Assessor's Parcel No. 110-600-050, (the "Brittan Heights Condominium") -- the first occurring on or about December 29, 2008 from Wong in his individual capacity to Wong as Trustee of Xela, and the second occurring on or about January 9, 2009 from Xela to Xela. These transfers are set aside and declared void as to Plaintiffs to the extent necessary to satisfy this Default Judgment, plus post-judgment interest. Pursuant to California Civil Code § 3439.07(c), the judgment entered above is hereby declared a lien on the Brittan Heights Condominium and Plaintiffs may levy execution on the Brittan Heights Condominium or its proceeds in order to satisfy their judgment.

Wong is permanently enjoined and restrained from each of the following, either directly or acting through his agents, servants, employees, successors, and assigns, and all other persons acting in

16

concert or conspiracy with Wong or affiliated with Wong:

    a)   Copying, reproducing, distributing, or using any unauthorized copies of Plaintiffs' copyrighted works; or

    b)   Otherwise infringing any of Plaintiffs' copyrights.

In addition, Wong is hereby ordered to immediately destroy any and all infringing copies of Plaintiffs' copyrighted works that are in his possession, custody, or control.

Plaintiffs must send an electronic copy of this Default Judgment to Wong via each email address that they believe Wong uses or has used in connection with his sale of the protected works. In addition, Plaintiffs must send a copy of this Default Judgment, via international certified mail, to the Sierra Sky Revocable Living Trust, 15th Floor, 21-23 Des Voeux Rd. C., Hong Kong. Plaintiffs must do so no later than five (5) days from the date of this Order.

IT IS SO ORDERED.

Dated: February 2, 2010

                                      UNITED STATES DISTRICT JUDGE